**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:15-CV-00075-RLV-DCK**

| | |
|---|---|
| AMBER A. TRIPLETT**,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **ORDER** |
| | ) |
| NORTH CAROLINA DEPARTMENT OF | ) |
| PUBLIC SAFETY**,** | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

    **THIS MATTER IS BEFORE THE COURT** on Defendant's Motion for Summary

Judgment. (Doc. 17). Plaintiff timely filed a response to Defendant's Motion. (Doc. 23).

Although this Court permitted Defendant an extension of time to file a reply, Defendant did not

file a reply and the time to do so has elapsed. (*See* Doc. 25). Accordingly, Defendant's Motion is

ripe for disposition. For the reasons stated below, Defendant's Motion for Summary Judgment

(Doc. 17) is **DENIED**.

**I.      BACKGROUND**

    In January 2008, Defendant, North Carolina Department of Public Safety, hired Plaintiff,

Amber A. Triplett, to work as a Correctional Health Assistant II at its Alexander Correctional

Institute ("ACI").[1] (Doc. 18-5 at 10-12). Triplett's job duties included distributing medication to

---

[1] The agency that hired Triplett in 2008 was the North Carolina Department of Corrections. (Doc. 18-5 at 10). The Court takes judicial notice that, subsequent to Triplett's hiring, the North Carolina Department of Corrections merged with other North Carolina agencies to form the North Carolina Department of Public Safety.

inmates, checking inmate vital signs and blood sugar levels, responding to code blue calls, and providing wound care. *Id.* at 20. Triplett performed these duties throughout the multiple wings of ACI, including the Segregation Unit. *See id.* at 21-22. When distributing medication to Segregation Unit inmates, a custody staff member always accompanied Triplett and a fellow medical staff member typically accompanied Triplett. *Id.* at 21-26.

Beginning in May of 2008, Triplett, when distributing medication in the Segregation Unit, witnessed inmates behaving in a sexually inappropriate manner and was the target of sexually inappropriate comments and physical threats. *Id.* at 21-41, 45-51; (*see also* Docs. 23-7, 23-8). In her deposition testimony, Triplett recalled four incidents with inmates that occurred in the Segregation Unit and one incident with an inmate that occurred in the multipurpose room. (Doc. 18-5 at 31-33, 38-39, 62-63). Four of the five incidents involved an inmate masturbating, accompanied by the inmate directing physical threats, and/or sexual obscenities at Triplett. *Id.* The remaining incident, which occurred in the Segregation Unit, involved an inmate grabbing Triplett's breast. *Id.* at 31. Triplett was unable to provide specific dates regarding any of the incidents and expressed uncertainty regarding other details surrounding the incidents, including which custody staff and medical staff members accompanied her at the time of the incidents. *Id.* at 31-33, 38-39, 62-63. Finally, Triplett testified that she often did not follow up on her incident reports to see whether inmates were disciplined. *Id.* at 30-34, 62-63. However, Triplett contended that custody staff members were inattentive to complaints about inmate sexual misconduct and that the few times she, and other female medical staff members, looked at inmate disciplinary records, the records did not show that that the inmate was disciplined. *Id.* at 40-41, 52-53.

The documents the parties attach to their submissions on Defendant's Motion for Summary Judgment, paint a far more complete picture of the inmate conduct and disciplinary responses

during Triplett's employment at ACI. Between May 2008 and April 2015, Triplett filled out forty-two incident reports on twenty-nine different inmates.[2] (*See* Doc. 23-7 at 2-5, 7, 11-21, 24-25, 29-34, 37; Doc. 23-8 at 1-4, 8-13, 15-19, 22, 24-26, 29-31, 34, 37, 39-45). Triplett also attached twenty incident reports from other staff members at ACI, of which five reports corroborated incidents in Triplett's incident reports and fifteen alleged inappropriate inmate conduct independent from the conduct in Triplett's incident reports. (*See* Doc. 23-7 at 22-23, 26, Doc. 23-8 at 23, 32, 38 (corroborating Triplett reports); Doc. 23-7 at 6, 8-10, 27, 35-36, 38-40, Doc. 23-8 at 5-7, 14, 20 (incident reports independent from Triplett's incident reports)). Finally, Triplett included a letter from a fellow female medical staff member documenting the ongoing issues with inmates masturbating, engaging in sexually harassing conduct, and using vulgar language. (Doc. 23-8 at 21). The letter further noted that medical staff members that worked at multiple correctional facilities were "appalled" by the lack of disciplinary action taken at ACI in response to the inmate conduct. (Doc. 23-8 at 21).

Defendant provided disciplinary records for six of the inmates identified in Triplett's incident reports. (Doc. 18-3 at 14-48; Doc. 18-4 at 51-84). The disciplinary records show that Defendant imposed discipline in relation to eight of the forty-two incident reports Triplett attached to her response to Defendant's Motion, as well as in relation to two incident reports filed by Triplett but not included in the attachment to Triplett's response. (Doc. 18-3 at 14-23, 26-35, 39-48; Doc. 18-4 at 51-84). An administrative services manager at ACI also compiled a spreadsheet attesting that her review of inmate disciplinary records showed that Defendant imposed discipline relative to fourteen additional incident reports filed by Triplett. (*See* Doc. 18-3 at 57). Of the remaining

---

[2] Although Triplett filled out forty-four incident reports, she twice filled out multiple incident reports relative to the same inmate and the same incident. (*Compare* Doc. 23-8 at 11-12, *with* Doc. 23-8 at 13; *Compare* Doc. 23-8 at 24-25, *with* Doc. 23-8 at 26)

incident reports filled out by Triplett, the administrative service manager's review resulted in the following findings (1) Defendant did not have a record of seventeen of the reports, (2) one report was dismissed, (3) no comment was made on one report, (4) the administrative service manager was "unable to determine" whether Defendant received one report; and (5) the inmate number on one report did not match any inmate number on file. *See id.*

In 2010, Triplett, along with three other female members of the medical staff, filed a claim with the North Carolina Industrial Commission alleging sexual harassment, hostile work environment, and retaliation at ACI. (Doc. 18-5 at 142-44). In 2012 or 2013, the North Carolina Industrial Commission dismissed Triplett's complaint. *Id.* at 143. In December of 2013, Triplett initiated contact with the Equal Employment Opportunity Commission (EEOC) by submitting an intake questionnaire. (Doc. 18-2 at 2-5). On the intake form, Triplett alleged "sexual harassment, sexual discrimination, hostile work environment, continuing violations" based on the conduct of the inmates and Defendant's lack of response to the inmates' conduct, including not imposing discipline or enforcing internal policies. *Id.* at 3, 6-7. Triplett, through her EEOC intake form, also alleged that staff and supervisors at ACI discarded her incident reports, instructed her that she could not "take charges out on the inmates," and advised her to find employment elsewhere if she could not handle the inmates' behavior. *Id.* at 6-7. On February 25, 2014, Triplett followed up on her EEOC intake form by filing an EEOC charge. *Id.* at 1. On her EEOC charge Triplett checked off the boxes for "sex discrimination" and "continuing action" and alleged that the last

discriminatory act occurred on November 3, 2013.[3]  *Id.* at 1.  Triplett alleges that she received a right-to-sue letter on March 18, 2015.  (Doc. 3 at 6).[4]

Triplett commenced this action on June 18, 2015.  (Doc. 1).  Through an Amended Complaint, Triplett advances factual allegations of discrimination, sexual harassment, hostile work environment, and retaliation but raises only two claims for relief: one for sexual discrimination and one for hostile work environment.  (Doc. 3 at 5-6).  Both claims for relief are premised on the conduct of inmates and Defendant's alleged failure to impose discipline.  *Id.*  Defendant filed the present Motion for Summary Judgment, arguing that (1) to the extent Triplett's amended complaint raises a claim for retaliation, she failed to exhaust her administrative remedies; (2) some, or all, of the inmate conduct Triplett relies on to advance her sex discrimination/hostile work environment claims should be excluded because the continuing violation theory does not apply and because the doctrine of laches applies; and (3) Triplett fails to make a prima facie case of sex discrimination based on a hostile work environment.  (Doc. 18 at 5-18).

## II.    DISCUSSION

### 1.    *Standard of Review*

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to support or oppose a summary judgment motion, a party is required to cite to "materials in the record, including depositions, documents, . . . affidavits or declarations, . . . admissions, interrogatory answers, or other materials;" or show "that the materials cited do not

---

[3] Although Triplett's EEOC charge identifies December 17, 2013, as the last date of discrimination, the narrative supporting the charge indicates that the most recent discriminatory act occurred on November 3, 2013, and Triplett's response to Defendant's Motion acknowledged that the last discriminatory act supporting the charge occurred on November 3, 2013.  (Doc. 18-2 at 1; *see* Doc. 23 at 8).

[4] In 2016, after filing this action, Triplett filed a second EEOC charge alleging discrimination on the basis of disability and alleging retaliation.  (Doc. 23-6 at 2).  As of Triplett's deposition, the EEOC had not issued Triplett a right-to-sue letter on her second EEOC charge.  (Doc. 18-5 at 133).

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *accord Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) (applying former version of Rule 56); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (same).

It is well-established that the mere existence of "some" factual disputes will not defeat summary judgment; rather, the dispute presented must be "genuine" and concern "material" facts. *Anderson*, 477 U.S. at 247-248 (emphasis in original); *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Only disputes over facts that might affect the outcome of the suit under relevant governing law fall within the relevant category. *See Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 374 (4th Cir. 2012). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Abstract doubts, minor discrepancies, and points irrelevant to the "material" facts are not genuine or material, and such do not cast sufficient doubt on the validity of testimony to preclude the entry of summary judgment. *Emmett*, 532 F.3d at 297; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006). The non-movant cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett*, 532 F.3d at 297 (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Although it is certainly true that "the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party," *Smith v. Va. Commonwealth Univ.*, 84 F.3d 672, 675 (4th Cir. 1996) (en banc), it is equally true that a court is "well within its discretion in refusing to ferret out the facts that counsel has not bothered to excavate." *Cray Commc'ns. Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994).

"In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor." *Pyatt v. Harvest Hope Food Bank*, 2012 WL 1098632, * 2 (D.S.C. Feb. 1, 2012) (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir.2002)). "The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms." *Id.* (citing *Reeves*, 530 U.S. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory")).

## 2. *Retaliation*

In her Amended Complaint, Triplett alleges that she suffered retaliation when she was "written up for unprofessional conduct" and when she was "told on several occasions that she needed to leave the Segregation Unit or find another job." (Doc. 3 at 5). Triplett alleges that the retaliation occurred as a result of her filing incident reports on inmates.[5] *Id.* Defendant contends that Triplett failed to exhaust her administrative remedies relative to her claim of retaliation because she did not check off the box for retaliation on her EEOC charge and because nothing in her factual allegations on the EEOC intake form or on her EEOC charge put Defendant on notice regarding Triplett's allegation of retaliation. (Doc. 18 at 5-7). Rather than addressing Defendant's

---

[5] In her deposition, Triplett further contended that she experienced retaliation when custody staff members declined to accompany her on the Segregation Unit, custody staff members threatened to prevent her from bringing a backpack into ACI, and she was not selected to respond to medical calls. (Doc. 18-5 at 55-58, 64-66). These allegations, however, do not appear in Triplett's Amended Complaint. (*See* Doc. 3 at 5).

exhaustion argument, Triplett responds by discussing the merits of her retaliation allegations. (Doc. 23 at 24-25).

"Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans*, 80 F.3d at 963.

The steps a plaintiff must take to exhaust her administrative remedies before raising a claim of retaliation differ depending on when the retaliation occurred relative to the filing of an EEOC charge alleging discrimination. When the retaliation occurs after the plaintiff files her EEOC charge, the retaliation grows out of the discrimination allegation and the plaintiff may raise her claim of retaliation for the first time in district court. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 302-304 (4th Cir. 2009) (holding that *Nealon* remains binding precedent and extending *Nealon* to claims for retaliation that arise after the conclusion of the EEOC investigation). This exception to the need to present a retaliation claim to the EEOC before bringing the claim in the district court exists because an employee who suffers retaliation for filing an initial EEOC charge should not be required to file a second EEOC charge at the risk of facing additional retaliation. *Nealon*, 958 F.2d at 590 (quoting *Malhotra v.*

*Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) and collecting additional cases from Second, Fifth, Eighth, and Tenth Circuits). Further, one of the primary purposes for requiring an employee to present all claims to the EEOC before filing suit is not advanced when the employer retaliates against the employee after the employee files an EEOC charge because there is little prospect of conciliation between the employer and employee. *See id.*

These practical rationales for not requiring a plaintiff to present a claim of retaliation to the EEOC, however, only apply when the retaliation occurs after a plaintiff files her EEOC charge. Accordingly, if the alleged retaliation occurred prior to a plaintiff filing an EEOC charge, plaintiff must include an allegation of retaliation in her EEOC charge to satisfy the exhaustion requirement. *See Miles*, 429 F.3d at 491-92 (relying on plaintiff's failure to check off retaliation box on EEOC charge and failure to include facts in narrative that suggested a claim for retaliation as basis for concluding that plaintiff failed to exhaust administrative remedies for pre charge retaliation claim); *see also Riley v. Tech. & Mgmt. Servs. Corp., Inc.*, 872 F. Supp. 1454, 1459-60 (D. Md. 1995) ("Plaintiffs must exhaust their administrative remedies when the alleged retaliation could have been raised in the original EEOC complaint." (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 545 n.2 (7th Cir. 1988))).

Triplett did not check off the box for retaliation on her first EEOC charge and nothing in the narrative on her first EEOC charge or the EEOC intake form alleges facts that suggest a complaint of retaliation. (*See* Doc. 18-2). Furthermore, although Triplett maintained detailed personal notes about the alleged retaliatory acts, she did not submit these notes to the EEOC. (Doc. 18-5 at 124-30; *see also* Doc. 23-5 at 40-64). Finally, although Triplett submitted a second EEOC charge that did include a claim of retaliation, Triplett does not rely on this EEOC charge in her "Exhaustion of Administrative Remedies" pleading and she did not receive a right to sue letter on

her second EEOC charge.  (*See* Doc. 1 at 6; Doc. 18-5 at 132-33); *see also Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995) ("We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint.").  Accordingly, if the retaliatory acts alleged by Triplett occurred prior to her filing her first EEOC charge, then Triplett needed to present the retaliation claim to the EEOC.  *Cf. Miles*, 429 F.3d at 491-92.  If, however, the retaliatory acts occurred after Triplett filed her first EEOC charge, then the issuance of a right-to-sue letter on her first EEOC charge satisfies the administrative exhaustion requirement.

A genuine issue of material fact exists regarding when the retaliatory acts alleged by Triplett occurred.  Triplett's amended complaint alleges that she suffered retaliation relative to and "solely" for the incident reports she filed on inmates.  (Doc. 3 at 5).  Forty of the forty-two incident reports attached to her response to Defendant's motion for summary judgment involve incidents occurring before the date of Triplett's EEOC charge.  (*See* Docs. 23-7, 23-8).  The timing of the vast majority of Triplett's incident reports relative to her EEOC charge, combined with Triplett's allegation that the retaliation she suffered was the result of her filing the incident reports, permits the inference that the retaliatory acts Triplett alleges commenced prior to Triplett filing her EEOC charge.  Triplett's inclusion of a retaliation claim in her complaint before the North Carolina Industrial Commission supports the inference that the retaliatory acts she alleges commenced before she filed her EEOC charge.  (*See* Doc. 18-5 at 142).  However, because the employer/defendant "has the burden of proving the affirmative defense of failure to exhaust administrative remedies," *Young v. Nat'l Center for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987), this inference is insufficient for purposes of summary judgment given other evidence in the record.

In her deposition, Triplett was questioned regarding the timing of the alleged retaliatory acts identified in her amended complaint. (Doc. 18-5 at 55-61, 64-66). Although Triplett could not recall the specific date of any retaliatory act, she testified that she was written up for unprofessional conduct after she filed her EEOC charge. *Id.* at 58-59. Defendant does not identify any evidence, such as records establishing when Triplett was written up for unprofessional conduct, that "blatantly contradicts" Triplett's testimony. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Furthermore, the fact that Triplett alleged retaliation in her complaint before the North Carolina Industrial Commission does not affirmatively establish that she experienced retaliation prior to her EEOC charge because some of the actions she terms retaliation would not support a Title VII claim for retaliation. Accordingly, because Defendant has not established that the acts of retaliation alleged by Triplett commenced before she filed her EEOC charge, Triplett may not have needed to present a retaliation claim to the EEOC to exhaust her administrative remedies and Defendant's Motion is **DENIED** as to any retaliation claim raised in Triplett's Amended Complaint.

Whether Triplett's Amended Complaint raises a retaliation claim, however, presents a different question. In its Motion for Summary Judgment, Defendant suggests that Triplett's amended complaint does not raise a retaliation claim. (Doc. 18 at 5). Defendant, however, did not brief the issue or otherwise flesh out this argument. *See id.* Plaintiff's response to Defendant's Motion for Summary Judgment does not acknowledge Defendant's suggestion or point to any aspects of her Amended Complaint that establish a claim for relief based on retaliation. (*See* Doc. 23 at 24-25). It is not apparent from the Court's review of Triplett's Amended Complaint that

Triplett raises a claim for relief based on retaliation or that a charge to a jury should include an instruction asking the jury to render a verdict on a retaliation claim and potentially award damages on such a claim. Although Triplett alleges that custody staff members engaged in certain conduct in retaliation for her filing incident reports on inmates, neither claim for relief in her Amended Complaint is labeled as a retaliation claim and the word retaliation does not appear in either claim.[6] (*See* Doc. 3 at 5-6). The Court, however, is reluctant to conclude that Triplett has not raised a claim for relief based on retaliation without allowing the parties an opportunity to brief the issue. Accordingly, the Court **ORDERS** supplemental briefing regarding whether Triplett raises a retaliation claim.[7]

3. *Sexual Discrimination & Hostile Work Environment Claims*

A. <u>Durational Scope of Claim</u>

Triplett's Amended Complaint alleges that the incidents giving rise to her complaint commenced in 2008. (Doc. 3 at 3). Defendant seeks to limit which incidents Triplett may rely on in advancing her claims, arguing that the continuing violation theory does not preserve Triplett's ability to rely on incidents occurring prior to 2013 and that the doctrine of laches completely bars Triplett's claims. (Doc. 18 at 7-13). The Court will consider each argument in turn.

---

[6] Triplett labels her first claim for relief "sex discrimination" and bases the claim on Defendant "subjecting her to sexually harassing name calling and sexual gestures by the inmates" and on Defendant's failure to take "effective action . . . to stop the [inmate] behavior." (Doc 3. at 5). Triplett labels her second claim for relief "hostile work environment" and the claim alleges, in pertinent part, that

> [t]he Plaintiff is a member of a protected class and was subjected to unwelcome harassment by inmates that was based upon her sex. The harassment created a hostile, intimidating and offensive work environment for Plaintiff. When told of the problems Plaintiff was experiencing during her employment, nothing was done to correct the problems, thus making Defendant liable.

*Id.* at 6.

[7] Through supplemental briefing, the parties may also raise arguments regarding whether the conduct alleged in Triplett's complaint meets the standard for advancing a retaliation claim.

### i. *Continuing Violation Theory*

An employee has 180 days or 300 days after an unlawful and discriminatory practice in the course of employment to file an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). The requirement that an employee file her EEOC charge within the timeframe specified by 42 U.S.C. § 2000e-5(e)(1) is mandatory and failure to timely file the charge will render a claim "untimely" and "no longer actionable." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-110, 115 (2002). Typically, the 180 or 300 day period to timely file an EEOC charge commences on the date that the "unlawful employment act" giving rise to the claim occurs. *Id*. at 109-110. Because the "unlawful employment act" giving rise to a hostile work environment claim "involves repeated conduct" the act "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years . . . ." *Id.* at 115. The series of acts that create the hostile work environment constitute a "single unlawful employment practice" for purposes of the filing timeframe in 42 U.S.C. § 2000e-5(e)(1). *Id.* at 117. Thus, so long as "an act contributing to [a hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. This rule prevails even when there is a considerable gap in time between the majority of the individual acts contributing to the hostile work environment and the individual act leading to the employee filing an EEOC charge. *See id.* at 118 (noting that 300 days could elapse between acts contributing to hostile work environment but that filing of EEOC charge within 180 or 300 days of last act would permit consideration of all acts).

Here, Triplett asserts that an act contributing to her hostile work environment/sex discrimination claims occurred on November 3, 2013, and Defendant does not dispute this assertion. The alleged conduct by the inmate on that date is sufficiently similar to the conduct of

13

inmates dating back to 2008 to establish a continuous chain of like acts supporting Triplett's claims and Defendant does not present any arguments suggesting otherwise. Accordingly, because Triplett filed her first EEOC charge within 180 days of the November 3, 2013 act, *Morgan* instructs that the continuing violation theory applies and this Court should consider all of the acts alleged by Triplett when evaluating Triplett's claim and determining Defendant's liability.[8]

    *ii.*  *Doctrine of Laches*

    Although the continuing violation theory may preserve the timeliness of a claim based largely on acts that well predate an EEOC charge, other equitable doctrines may call for the dismissal of a hostile work environment claim. *See Morgan*, 536 U.S. at 121-22. Specifically, "an employer may raise a laches defense, which bars a plaintiff from maintaining a suit if [s]he unreasonably delays in filing a suit and as a result harms the defendant." *Id.* at 121. To establish this defense, the employer must prove (1) a lack of diligence by the employee in bringing her claim, and (2) prejudice to the employer. *Id*. at 121-22. To satisfy the second requirement, "there must be a clear showing of substantial prejudice to the defendant's ability to defend itself." *Pande v. Johns Hopkins Univ.*, 598 F. Supp. 1084, 1088 (D. Md. 1984). "A finding of prejudice cannot rest on the [employer's] generalized assertions." *EEOC v. Chesapeake & Oh. Ry. Co.*, 577 F.2d 229, 234 (4th Cir. 1978). Instead, "prejudice must arise from and be assessed with respect to the facts of each individual claim" and it may only be appropriate to answer the prejudice inquiry "after the circumstances surrounding each claim have been fully explored." *Id.*

---

[8] Defendant's citation to cases that predate *Morgan* and consider when an employee experienced a sufficient number of acts to sustain an EEOC charge is thoroughly unpersuasive as *Morgan* specifically rejected this consideration as the dividing point between timely and untimely hostile work environment claims. *Morgan*, 536 U.S. at 117-18. Instead, *Morgan* opted for a bright line rule that if the EEOC charge was timely as to one act in the series, it is timely for purposes of filing a claim based on all acts in the series. *Id.* at 118.

Assuming for the sake of argument that Triplett was not diligent in bringing her claim, Defendant has not shown that its ability to defend Triplett's claims was compromised by Triplett's alleged delay in bringing her claim. As discussed below, Triplett's claim rests largely on whether Defendant appropriately disciplined inmates in response to Triplett's incident reports. Defendant identifies the delay between the incidents and Triplett's filing of her EEOC charge as the prejudice-creating delay, asserting that it no longer possesses the disciplinary records for the inmates identified in Triplett's incident reports. (Doc. 18 at 12-13). Defendant represents that it does not retain complete files on incident reports after five years. *Id.* 11-12. As Triplett filed her EEOC charge on February 25, 2014, Defendant should possess complete records on the thirty incidents Triplett allegedly reported after February 25, 2009. As for the remaining twelve incidents, while Triplett lacks memory regarding ten of the incidents, she has submitted copies of all twelve of the incident reports. (Doc. 23-7 at 2-5, 7, 11-18). Furthermore, Defendant's review of its records reveals that it possesses discipline records relevant to five of the twelve incidents. (Doc. 18-3 at 57). Finally, to the extent that Triplett brought a claim in the North Carolina Industrial Commission raising similar allegations to the allegations in her EEOC charge, the Industrial Commission claim placed Defendant on notice, as early as 2010, that the inmate discipline records were relevant to the claims Triplett raises in this Court. Given that this matter commenced at a point in time not later than five years after the first act supporting the claim, equitable considerations do not warrant limiting the scope of Triplett's present claim when it is not apparent why or when Defendant purged the relevant records.[9] Accordingly, the doctrine of laches does

---

[9] It is possible that the pre February 25, 2009, records may have been purged between the North Carolina Industrial Commission's dismissal of Triplett's complaint and Triplett filing her EEOC charge. Defendant, however, fails to explicitly allege such, provide any evidence of such, or even apprise the Court of the date of the North Carolina Industrial Commission's order dismissing Triplett's complaint. Additionally, as Defendant lacks records on many of Triplett's post February 25, 2009 incident reports, it is not apparent that the passage of time explains the absence of the pre February 25, 2009 records.

not bar Triplett's claim in whole and Defendant is yet to satisfy its burden of showing prejudice with respect to the parts of Triplett's claim that predate February 25, 2009.

B.    *Prime Facie* Case of Hostile Work Environment/Sex Discrimination

Finally, Defendant argues that Plaintiff fails to make out a *prime facie* case of hostile work environment/sex discrimination.[10]    (Doc. 18 at 13-18).    Title VII prohibits employers from discriminating against an employee with respect to the terms, conditions, or privileges of employment.    42 U.S.C. § 2000e-2(a)(1).    "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R & R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001); *see also Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001).    A hostile work environment claim asserts that the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted).    To establish a Title VII claim predicated on a "hostile work environment based on sex, a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 254 (4th Cir. 2015).    Defendant concedes that Triplett satisfies the first element but contests whether Triplett produces sufficient evidence to allow a reasonable jury to conclude that she satisfies the latter three elements.    (Doc. 18 at 14-18).

---

[10] The Court agrees with Defendant's interpretation of Triplett's Amended Complaint respective to both claims for relief being based on the single theory that Defendant created a hostile work environment by not disciplining inmates for engaging in sexually inappropriate conduct and language.

On the second element, Defendant contends that the inmates' conduct was not motivated by Triplett's sex because inmates routinely show disrespect toward all staff members and because male custody staff members who accompanied Triplett in the Segregation Unit also observed the inmate conduct. (Doc. 18 at 14-15). "The second element of the test requires proof that the offending conduct was based on the plaintiff's sex. This element comes straight from Title VII's 'discriminat[ion] ... because of ... sex' requirement." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (quoting 42 U.S.C. § 2000e–2(a)(1)). "The critical issue in the 'because of sex' inquiry is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (brackets and internal quotation marks omitted). Put another way "[a]n employee is harassed or otherwise discriminated against because of his or her gender if, but for the employee's gender, he or she would not have been the victim of the discrimination." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000) (internal quotation marks omitted). A finding of discrimination is appropriate, "for example, when a woman is the individual target of open hostility because of her sex or when a female victim is harassed in such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Ocheltree*, 335 F.3d at 331 (ellipse, citation, and internal quotation marks omitted).

If the evidence Triplett relied on to support her claims involved run of the mill disrespect by inmates, Defendant's argument would prevail. However, the record shows the language and conduct the inmates directed at Triplett may have been motivated by Triplett's sex because the conduct included displays of masturbation, an incident where an inmate grabbed Triplett's breast, and sexual insults, threats, and comments that both noted Triplett's sex and mentioned sexual acts with and against women. Although male custody staff members observed the inmate conduct,

nothing in the record suggests that the inmates directed any sexual insults or threats at the male staff members, attempted to grab a male staff member's genitalia, or otherwise made comments about sexual acts with or against men. It is also doubtful that the inmates would have engaged in the alleged conduct if both Triplett and the custody staff member that accompanied Triplett were males. Therefore, a reasonable jury could conclude that the inmate conduct was directed at Triplett because of her sex.

Turning to the third element, "[t]he 'severe or pervasive' element has both subjective and objective components." *Ocheltree*, 335 F.3d at 333 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Defendant argues that Triplett fails to satisfy the objective component of the element. (*See* Doc. 18 at 15-16). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir 2008) (internal quotation marks and brackets omitted). Circumstances to consider, "include[e] 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ocheltree*, 335 F.3d at 333 (quoting *Harris*, 510 U.S. at 23). No single circumstance is required for a finding that the harassment was severe or pervasive. *Harris*, 510 U.S. at 23.

Defendant focuses on the last circumstance identified in *Ocheltree* and *Harris*, arguing that the inmate conduct did not unreasonably interfere with Triplett's work performance. (Doc. 18 at 15-16). In support of this argument, Defendant first contends that Triplett filled out only an average of five incident reports a year. *Id.* While technically accurate, Defendant's averaging of the number of reports Triplett's filled out distorts the true frequency of the inmate conduct alleged. Although Triplett only filled out three reports from 2013 through 2015, she filled out thirty-three

reports between May 2008 and December 2010. (Doc. 23-7 at 2-5, 7, 11-21, 24-25, 29-34, 37; Doc. 23-8 at 1-4, 8-12, 15-19, 22). Additionally, within this latter period of time, Triplett, as well as other females at ACI, often filled out multiple incident reports within a single month. (*See* Doc. 23-7 at 4-5, 7, 9-14, 20-26, 29-30, 32-37, 39-40; Doc. 23-8 at 1-15, 18-19). Finally, Triplett's EEOC intake form asserts that ACI's administrator told her that she "couldn't take charges out on the inmate[s]" and Triplett testified that ACI's administrator and custody staff members discouraged her from filing reports and that she experienced retaliation for filing reports. (Doc. 18-2 at 6; Doc. 18-5 at 52-66). These allegations, if credited by a jury, may explain the drop off in the number of incident reports Triplett filled out between 2013 and 2015. Accordingly, a reasonable jury could conclude that the inmate conduct occurred at a sufficient frequency to impact Triplett's work performance.

Second, Defendant contends that the inmate conduct at issue only occurred when Triplett distributed medication on the Segregation Unit, which represented a single part of her work duties. (Doc. 18 at 15-16). The Court finds this contention unsupported. Defendant fails to point to anything in the record demonstrating what percent of the time Triplett spent on the Segregation Unit. Based on Triplett's incident reports, it appears that Triplett distributed medication in the Unit at least twice every day and spent additional time maintaining medical records for Segregation Unit inmates. Furthermore, there is evidence in the record that when Triplett sought a disability accommodation in the form of removal from the Segregation Unit, Defendant denied her request. (*See* Doc. 18-5 at 79-80, 98-99; Doc. 23-6). Defendant's denial of Triplett's accommodation request permits the reasonable inference that Triplett's duties on the Segregation Unit were integral

to her work duties. Accordingly, neither of Defendant's contentions persuade the Court that a jury could not conclude that the inmate conduct unreasonably impacted Triplett's work performance.[11]

Lastly, on the fourth element, Defendant argues that the inmates' conduct cannot be imputed to Defendant because Defendant used all available and approriate measures to discipline the inmates. (Doc. 18 at 16-18). Typically, an employer is not liable for the conduct of individuals who are not employees because the non-employees are not agents of the employer. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 812 (7th Cir. 2001) (noting "tension" between cases permitting vicarious liability for non-employee conduct and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 775 (1998), which held that "an employee of an independent contractor typically cannot be considered an agent of the employer"). However, liability may be imposed on the employer vicariously through a negligence theory when an employer "condones or tolerates the creation of [a hostile work] environment . . . regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998). A non-employee's conduct is imputable to the employer where the employer "'fail[s] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Id.* at 1074 (quoting *Hirschfeld v. N.M. Corr. Dep't*, 916 F.2d 572, 577 (10th Cir. 1990)); *see also* 29 C.F.R. § 1604.11(e) ("An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the

---

[11] Even if a jury could not reasonably conclude that the inmate conduct impacted Triplett's work performance, the threatening nature of the inmates' comments (both sexually and physically), combined with the frequency of the threats between 2008 and 2010, would permit a jury to conclude that, considering all the factors, the harassment was severe and pervasive. *See Harris*, 510 U.S. at 23 (noting that plaintiff need not show existence of all circumstances to advance hostile work environment claim).

workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.").

A genuine issue of material fact exists regarding what disciplinary actions Defendant imposed on the inmates identified in Triplett's incident reports. Although Defendant contends that it disciplined every inmate reported by Plaintiff (Doc. 18 at 17-18), the records provided by Defendant only affirmatively establish the imposition of discipline relative to eight of the forty-two incident reports attached to Plaintiff's response, as well as two incidents reports submitted by Triplett but not attached to her response. (Doc. 18-3 at 14-23, 26-35, 39-48). Accepting ACI's administrative services manager's attestation that discipline was imposed relative to an additional fourteen incidents, it appears discipline was not imposed relative to roughly half of the forty-two incidents identified in Triplett's reports and well less than half of the fifty-seven incidents identified in Triplett's reports and the reports of other staff members.[12]

While Defendant asserts that Triplett never submitted seventeen of her incident reports, Triplett has produced copies of her incident reports. (Docs. 23-7, 23-8). Triplett also asserted on her EEOC intake form that Defendant "trashed" some of her incident reports and Triplett testified that when she and other medical staff members looked at inmate discipline records the records often showed that no charges were filed and no discipline was imposed. (Doc. 18-2 at 6; Doc. 18-5 at 39-41). The possibility that some of Triplett's incident reports were discarded and not entered into the system and that discipline was not imposed is consistent with Triplett's testimony that

---

[12] The Court is skeptical of the administrative services manager's summary of the review of the inmate discipline records where Defendant is able to produce disciplinary records for some inmates but provides no explanation for why it did not produce records for other inmates it claims were disciplined. Furthermore, it does not appear that the administrative services manager reviewed the inmate discipline records relative to the incident reports filled out by other staff members and attached to Triplett's response to Defendant's Motion for Summary Judgment. Accordingly, where Triplett testified that other staff members reviewed inmate discipline records and saw no discipline imposed, the Court is forced to assume, at this juncture, that discipline was not imposed relative to the fifteen incidents identified in the reports of the other staff members.

custody staff members and supervisors at ACI were dismissive of her complaints about inmate conduct. *See id.* at 52-53. It is also consistent with the letter from the fellow medical staff member that discusses the ongoing issues with inmate conduct and the observations of traveling medical staff members that the lack of discipline at ACI was "appalling." (Doc. 23-8 at 21). Finally, Defendant's claim that it did not receive some of Triplett's incident reports is dubious where two of the reports of which Defendant claims not to have a record were accompanied by corroborating incident reports from other staff members at ACI. (*See* Doc. 18-3 at 56, ln. 36, 57, ln. 36; Doc. 23-8 at 23-24, 32-36). This doubt is only enhanced where one of these two incident reports led to an investigation, the taking of a statement from the inmate, and a recommendation by the investigating officer that the inmate be disciplined. (Doc. 23-8 at 33, 35-36).

Considering all of the evidence in the light most favorable to Triplett, a reasonable jury could conclude that female medical staff members repeatedly raised issues with inmate conduct and that supervisors and/or administrators at ACI refused to take appropriate action and impose effective discipline. Accordingly, a reasonable jury could impute the inmates' conduct to Defendant. Therefore, Triplett has identified sufficient evidence on each of the four elements of a claim for hostile work environment and Defendant's Motion for Summary Judgment is **DENIED** as to both of Triplett's sex discrimination claims premised on a hostile work environment.

## III.    DECRETAL

**IT IS, THEREFORE, ORDERED THAT**

(1)    Defendant's Motion for Summary Judgment (Doc. 17) is **DENIED**; and

(2)    The Parties shall submit supplemental briefs on whether Plaintiff pleads a claim for relief based on retaliation. Defendant shall submit its brief no later than January 20, 2017. Plaintiff shall submit her brief no later than January 27, 2017.

Signed: January 10, 2017

Richard L. Voorhees
United States District Judge