IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15CV75

| | | |
|---|---|---|
| AMBER A. TRIPLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court upon the Plaintiff's Motion for Additional Relief. A jury trial in this case was held by the Honorable Richard Voorhees in May of 2017, at which the jury found for the Plaintiff on her hostile work environment claim only and awarded her $10,000. Plaintiff thereafter sought attorneys' fees and costs and, in addition, filed the present Motion for Additional Relief. Judge Voorhees entered an Order granting Plaintiff's Motion for Attorneys' Fees and Costs with modification, but did not address Plaintiff's Motion for Additional Relief.

This matter was subsequently transferred to the undersigned upon the retirement of Judge Voorhees. The Court entered an Order directing the parties to secure a transcript of the trial and thereafter submit amended briefs that contain citations to the trial transcript in support of their arguments and allegations. The parties have now complied with the Court's Order and this Motion is finally ripe for disposition.

1

## I. FACTUAL BACKGROUND

Plaintiff is former employee of Defendant. Plaintiff's Second Amended Complaint alleged that she was employed by Defendant at its Alexander Correctional Institute in June 2007 as a Correctional Health Assistant and her job duties consisted of assisting with the healthcare of the inmates at the facility. (Compl. ¶ 6). She was assigned to the Segregation Unit where she assisted the healthcare providers with the daily medical care of the inmates in the unit. *Id*. at ¶ 10. She alleges that while working in the Segregation Unit she was subjected to continuous sexually harassing incidents by the inmates which she reported to management but that management failed to address her complaints. *Id.* at ¶¶ 11-19. Plaintiff alleges that as a result of her hostile work environment she suffered medical problems, and took medical leave from March 16, 2016 to April 6, 2016. At trial, Plaintiff testified that she had not regularly worked in the Segregation Unit since 2014, and had only been assigned to work there once since that time. (Tr. p. 372).

Plaintiff resigned from her job on April 15, 2016 after her return from medical leave. She claims that upon her return she was asked to fill in for an absent co-worker in the Segregation Unit. However, after she refused, her supervisor acquiesced and allowed her to work in the Chronic Unit instead, where she had described the inmates as respectful. (Tr. pp. 373, 773). Despite the fact that she was not forced to work in the Segregation Unit, Plaintiff submitted her resignation, effective April 15, 2016. Her resignation letter stated:

> I'm resigning effective 4/15/16 from Alexander Correctional Institution **due to repeated retaliatory incidents from staff** creating a hostile work environment and undue stress, preventing me from performing all said work duties. I have tried to get resolution from the administration, medical staff to no avail. Therefore, it is regretfully necessary to resign my position as a CHA II to protect my health and well- being.

(Def. Ex. 3) (emphasis added).

Plaintiff alleged in her Second Amended Complaint and throughout the trial that she was forced to resign because she was being subjected to retaliation. (Tr. p. 266). At trial, she testified extensively that she felt that her fellow employees were retaliating against her by requesting medical records clearing her to return to work following her medical leave. She refused to submit the required return-to-work documents as requested by Defendant. (Tr. p. 372).

After her resignation Plaintiff diligently sought other employment. (Tr. pp. 268-70). She eventually secured a job with Caldwell Memorial Hospital, earning a higher salary and comparable benefits. (Tr. pp. 269; 278-79; 385). Plaintiff resigned this position after she was moved from day shift to night shift. (Tr. pp. 278-79; 385). Plaintiff then obtained a second job but also resigned that position because as she asserted at trial she "had to go to court dates for my unemployment, and my mediation, and my attorney appointments" (Tr. p. 271).

Plaintiff sued for hostile work environment based on sex and retaliation. At trial, the jury ultimately rejected Plaintiff's retaliation claim but awarded her a "$10,000 Limit" for her hostile work environment claim. Plaintiff now seeks front pay and back pay as a prevailing Plaintiff under Title VII.

## II. DISCUSSION

The Court has a statutory duty to determine awards of equitable relief in Title VII claims. *See* 42 U.S.C. § 2000e–5(g)(1) ("If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may ... order ... reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate."). The trial court has "wide discretion to award equitable relief." *Peyton v. DiMario*, 287 F.3d 1121, 1126 (D.C. Cir. 2002) (quoting *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995)). The court should "fashion this relief so as to provide a victim of

employment discrimination the most complete make-whole relief possible." *Id.* However, the equitable relief of back pay is not an automatic remedy for successful Title VII plaintiffs. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975).

The problem with Plaintiff's position is that in her Second Amended Complaint and throughout trial, Plaintiff argued that she was forced to resign because she was being subjected to retaliation. (Tr. p. 266). The jury unequivocally rejected Plaintiff's contention that she was subjected to unlawful retaliation. The evidence at trial revealed that Plaintiff was no longer regularly assigned to the Segregation Unit where the alleged sexual harassment took place and in fact had not been assigned there for over two years. (Tr. p. 372). When she refused to fill in for a co-worker in the Segregation Unit, her supervisor did not force her to work in that Unit. (Tr. p. 373).

Plaintiff's Second Amended Complaint and the evidence introduced at trial all support the fact that Plaintiff resigned her employment due to what she alleged was retaliation. The back pay for which Plaintiff argues she is entitled directly flows from her decision to resign which was directly tied to Plaintiff's unsuccessful retaliation claim. Plaintiff did not argue, much less prove at trial, that her resignation was a result of the hostile work environment that she alleges she endured while working in segregation. The jury rejected Plaintiff's assertions that she was subjected to retaliation and as a direct result of that retaliation she was forced to resign. Although Plaintiff prevailed on her hostile work environment claim, the argument she presented at trial and in her pleadings linked her resignation, and thus entitlement to back pay, to her retaliation claim. Awarding Plaintiff back pay under these circumstances would not further the purposes of Title VII.

In the alternative, the Court finds that Plaintiff has failed to mitigate any damages as required by the Fourth Circuit. *See Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 651 (4th Cir. 2002). In the context of this case, where Plaintiff was removed from the environment that she deemed hostile and had been for over two years, Plaintiff's resignation constitutes a failure to mitigate. Moreover, the duty of a Title VII plaintiff to mitigate damages includes the obligation to accept a "job substantially equivalent to one he was denied." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982). Such a duty of necessity also includes the obligation to make reasonable and good faith efforts to maintain that job once accepted. While Plaintiff did obtain a substantially equivalent job, she voluntarily resigned from that job for personal reasons. (Tr. pp. 278-79; 385). Plaintiff obtained a second job and also resigned that position. (Tr. pp. 271).

The considerable authority among the decisions of reviewing courts supports the long-standing principle that a plaintiff who voluntarily quits comparable, interim employment fails to exercise reasonable diligence in the mitigation of damages. *See DiSalvo v. The Chamber of Commerce of Greater Kansas City*, 568 F.2d 593, 597-598 (8th Cir. 1978). In this case, Plaintiff voluntarily quit suitable and comparable employment twice for personal reasons. Back pay is foreclosed when an employee's resignation from suitable employment is motivated by personal reasons unrelated to the job or as a matter of personal convenience. *See Reiner v. Family Ford, Inc*., 146 F. Supp. 2d 1279 (M.D. FL. 2001) (court held that plaintiff's inability to retain subsequent employment due to child care issues did not excuse her duty to mitigate). Accordingly, she has freely chosen to incur a loss of earnings, thereby failing to use reasonable diligence in the mitigation of damages. Furthermore, it was unreasonable for Plaintiff to voluntarily quit her jobs without having secured replacement employment. Plaintiff unreasonably

5

failed to maintain her employment and thus failed to mitigate her damages. Accordingly, in its discretion, the Court denies Plaintiff's request for back pay.

For the same reasons the Court has denied back pay, the Court likewise denies Plaintiff's request for front pay.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Additional Relief is hereby DENIED;

IT IS FURTHER ORDERED Defendant's Motion to Strike is hereby DENIED AS MOOT.


Signed: September 5, 2018

Graham C. Mullen
United States District Judge